```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

CONFIDENCE EMPIRE, INC., LEONEL    :
LOPS,                              :
                                   :
     Plaintiffs,                   :
                                   :
v.                                 :   Case No. 3:20-cv-01617 (RNC)
                                   :
META PLATFORMS, INC.,              :
                                   :
     Defendant.                    :
```

RULING AND ORDER

Plaintiffs Confidence Empire, Inc. (Confidence Empire) and Leonel Lops bring this action against defendant Meta Platforms, Inc. (Meta), formerly known as Facebook, Inc., alleging several business torts, copyright infringement, and violation of the Connecticut Unfair Trade Practices Act.  Meta has moved to dismiss the entire action with prejudice.  After three attempts, plaintiffs have failed to state any claim on which relief may be granted.  Based on plaintiffs' "repeated failure to cure deficiencies by amendments previously allowed," dismissal with prejudice is now warranted.  See Sprague v. Salisbury Bank & Tr. Co., 969 F.3d 95, 101 (2d Cir. 2020) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  Defendant's motion is therefore granted.

1

I.   Background

The corrected second amended complaint alleges the following.  Plaintiff Confidence Empire is a Connecticut corporation "engaged in the business of selling goods and services[,]" including clothing, luggage, accessories, and "yoga over the Internet[.]"  ECF No. 57 at 2, ¶ 6.  Confidence Empire "relies primarily on the Internet for its business model[,]" and uses Meta's Facebook platform to advertise and sell its products and services.  Id.  Plaintiff Leonel Lops owns a registered figurative trademark that includes a stylized crown above the words "CONFIDENCE EMPIRE."  Id. at 1, ¶ 3; see ECF No. 43 Ex. C.[1]  Confidence Empire "has attained common law trademark rights" to Mr. Lops' registered trademark by putting "goods and services into commerce."  Id. at 4, ¶ 9.

Plaintiffs contend that Facebook "hosts a page with the name Confidence Empire which was created without the Defendant's consent."  Id. at 2, ¶ 7.  (I assume this is a typographical error, and plaintiffs mean that the page was created without plaintiffs' consent.)  Meta also hosts "Plaintiffs' page on its [Facebook] website."  Id. at 2, ¶ 8.  Meta "allowed

---

[1] At several points in their Second Amended Complaint, Plaintiffs reference exhibits that were attached to their First Amended Complaint but mistakenly omitted from the Second Amended Complaint.  In its motion to dismiss the SAC, Meta treats the exhibits as incorporated by reference.  See ECF No. 60., ECF No. 71 (denying motion to amend on this basis).

[plaintiffs'] page to be corrupted or infiltrated by others," and allowed potential customers to be "diverted" from plaintiffs' page to "disturbing images of false content videos and websites" that are unrelated to plaintiffs' business, causing customers to "not engage with the Plaintiffs to conduct business." Id.  When plaintiffs asked defendant to "stop this practice," (presumably referring to the alleged diversions from plaintiffs' page), defendant "refused to take any steps" in response.  Id. at 2, ¶ 9.

Plaintiffs also allege that they "discovered several pages on Facebook" that displayed Mr. Lops' registered trademark.  Id. at 5, ¶ 10.  Plaintiffs submitted a "take-down request" for three allegedly infringing pages, but defendant declined to remove them.  Id. at 5, ¶ 11.

   II.  Legal Standard

Under Rule 12(b)(6), a complaint is properly dismissed when it fails to state a claim upon which relief may be granted.  To withstand a properly supported motion to dismiss under this Rule, a complaint must present a claim that is "plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plausibility standard requires that a complaint contain factual allegations permitting a reasonable inference that the defendant is liable for the alleged wrong.

3

III. Discussion

    a. Count One: Tortious Interference with Business Relations

Plaintiffs first attempt to state a claim for tortious interference with business relations.  The elements of a tortious interference claim are "(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 27 (2000).  Plaintiffs must also "plead and prove at least some improper motive or improper means." Daley v. Aetna Life & Cas. Co., 249 Conn. 766, 806 (1999) (internal quotation marks omitted).

Plaintiffs' tortious interference count rests on two factual allegations: First, there are other pages on the Facebook platform whose name contains the phrase "Confidence Empire," ECF No. 57 at 2, ¶ 7, and second, "Plaintiffs' page" on the Facebook platform was "infiltrated by others such that when potential customers click on the Confidence Empire page they are diverted" to content that is "unrelated to and harmful to the Plaintiffs' business reputation and image," id. ¶ 8 (emphasis added).  Plaintiffs allege that defendant's failure to rectify these issues constitutes tortious interference.

4

Meta argues first that plaintiffs' allegations on this count are so vague that they fail to put Meta on fair notice of plaintiffs' claim – for instance, the SAC does not identify the plaintiffs' page, "including whether it is a Page maintained by the corporate entity Confidence Empire or a personal Page maintained by Mr. Lops.  Likewise, the SAC fails to identify where visitors are allegedly redirected or what is offensive or disturbing about those pages." ECF No. 60-1 at 11.  Moreover, defendant argues, plaintiffs fail to allege the necessary elements of a tortious interference claim.  Id. at 12-13.

In response, plaintiffs cite Conrad v. Erickson, which holds that the parties in an intentional interference case need not be competitors.  41 Conn. App. 243, 245 (1996).  Further, to counter the argument that they have not alleged the requisite improper motive, plaintiffs allege without legal support that "trademark interference is an improper motive per se." ECF No. 67 at 4.

Plaintiffs have failed to state a claim for tortious interference.  Their reliance on Conrad misses the point; nothing in that case suggests that the elements of a tortious interference claim are somehow modified or waived when the parties are not competitors.  See 41 Conn. App. at 245-46.  And, as defendant points out, plaintiffs do not allege that Meta knew about any specific business relationship between plaintiffs and

5

a third party and, knowing of that relationship, <u>intentionally</u> interfered with it.  The closest plaintiffs come is alleging that they "have repeatedly asked" defendant "to stop this practice" (presumably referring to redirecting users from plaintiffs' page, but maybe also referring to allowing pages other than plaintiffs' to display the name "Confidence Empire") but Facebook "has refused to take any steps to stop the practice despite its ability to do so," ECF No. 57 at 2 ¶ 9, and despite knowing that the alleged redirects "negatively impacted the plaintiffs' business," <u>id.</u> ¶ 10.  But alleging that Meta ignored a takedown request is not the same as alleging that it intended to interfere with any particular business relationship of plaintiffs by doing so.

Likewise, the only further allegation of "actual loss" is plaintiffs' claim that they "have suffered damages including lost revenue, lost profit and a destruction of the enterprise value of their business."  <u>Id.</u> ¶ 11.  The SAC contains no factual support for this claim, which is insufficient on its own.  See <u>Villages, LLC v. Longhi</u>, 187 Conn. App. 132, 147 (2019) ("[I]t is essential to a cause of action for unlawful interference with business that it appear that, except for the tortious interference of the defendant, there was a reasonable probability that the plaintiff would have entered into a

contract or made a profit." (quoting Goldman v. Feinberg, 130 Conn. 671, 675 (1944)).

Finally, plaintiffs argue that "trademark infringement is an improper motive per se." No case has been cited or found that supports this proposition. Moreover, plaintiffs' trademark infringement claim is unavailing for reasons discussed below. See section d, infra. Accordingly, count one is dismissed.

    b. Count Two: Trade Libel

Plaintiffs also attempt to bring a claim for trade libel. To successfully plead such a claim, plaintiffs must allege that (1) defendant made a defamatory statement; (2) the defamatory statement identified the plaintiffs to a reasonable third person; (3) the defamatory statement was published to a third person; and (4) plaintiffs suffered injury as a result of the statement. See Antech Diag., Inc. v. Vet. Oncology & Hematology Ctr., LLC, 2019 WL 10351654, at *4 (D. Conn. March 5, 2019) (noting that trade libel is "treated as a 'species of defamation' and analyzed by courts in a similar manner" (quoting QSP, Inc. v. Aetna Cas. & Sur. Co., 256 Conn. 343, 356 (2001)).

Meta argues plaintiffs' trade libel count fails for two separate reasons: First, it is missing several elements for a claim of trade libel in Connecticut and therefore fails as a matter of law. Second, even if the claim were adequately pleaded, it would nonetheless fail because Meta is protected

7

from liability by Section 230(c)(1) of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1).

I need not address Facebook's CDA argument because I agree that the SAC does not state a claim for trade libel. Plaintiffs allege that certain "screen shots and images" of other pages containing the words "Confidence Empire" "are defamatory of the Plaintiffs' legitimate business in that they charge improper conduct or a lack of skill or integrity in one's business and is of such a nature that it is calculated to cause injury to one in it its profession or business," ECF No. 57 at 3 ¶ 12, and, further, that they "constitute libel per se as they in no way represent Plaintiffs' actual business operations and are offensive" to customers, id. ¶ 13.

Simply put, the SAC contains no factual support for these conclusory allegations. Plaintiffs do not explain how the materials shown in the attached screenshots are defamatory or offensive. Nor do they explain why other Facebook pages using the name "Confidence Empire" and/or posts on those pages should be understood as "statements" attributable to Meta, when they appear to be content posted to Meta's Facebook platform by third parties. Count two must therefore be dismissed.

    c. <u>Count Three: Negligence</u>

Plaintiffs next attempt a negligence claim. The elements of a negligence claim are duty, breach of that duty, causation,

and actual injury.  Lawrence v. O & G Indus., Inc., 319 Conn. 641, 649 (2015).  The basis of plaintiffs' negligence claim is that defendant breached a duty "to not allow its trade mark to be interfered with," ECF No. 57 at 3 ¶ 11, because "it has allowed others unknown to the Plaintiffs to use the name Confidence Empire," "despite demand [sic] from the Plaintiffs to remove" other pages bearing the name, id. at 4 ¶ 12.

Meta argues that it does not owe a legal duty to plaintiffs to prevent "interference" with their trademark, and even if such a duty existed, the complaint alleges (and the attached exhibit shows) that the other pages do not actually use either plaintiff's trademark.  Rather, they use only the phrase Confidence Empire, which appears in the registered figurative trademark owned by Lops but is not itself trademarked by either plaintiff.  ECF No. 60-1 at 11.

Even assuming Meta would have had a duty to stop trademark infringement occurring via its Facebook platform, plaintiffs' claim fails because they do not plausibly allege trademark infringement.  See Section d, infra.  Therefore, even if they have pled a duty, they fail to plead a breach, and their negligence claim must fail.

    d. Count Four: Trademark Infringement

In count four, plaintiffs allege trademark infringement under both state and federal law, based on Meta's alleged

9

refusal to take down Facebook pages with "Confidence Empire" in their names. See ECF No. 57 at 5 ¶¶ 11-14.[2] Courts analyze trademark infringement claims under a two-part test: "The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether [the] defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." Virgin Enters., Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003). In the Second Circuit, courts look to eight principal factors to evaluate the "likelihood of confusion": "(1) the strength of the senior mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will 'bridge the gap'; (5) actual confusion; (6) the defendant's good faith (or bad faith) in adopting its own mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers." Savin Corp. v. Savin Grp., 391 F.3d 439, 456 (2d Cir. 2004) (citing Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961)). Defendant

---

[2] Plaintiffs allege that "the CONFIDENCE EMPIRE mark was being used" on other pages, ECF No. 57 at 5 ¶ 10, but the supporting exhibits show that only the words "Confidence Empire," and not Mr. Lops' registered figurative trademark, appear on the pages. When, as here, a plaintiff's factual allegations are contradicted by exhibits attached to the pleading, a court need not treat the factual allegations as true for purposes of resolving a motion to dismiss. Endemann v. Liberty Insurance Corp., 390 F. Supp. 3d 362, 370 (N.D.N.Y. 2019).

again persuasively argues that plaintiffs have failed to state a claim.[3]

There are no factual allegations in the SAC relevant to the likelihood of confusion, and the exhibits attached to plaintiffs' opposition to Meta's motion to dismiss hurt plaintiffs' cause rather than help it.[4]  Exhibits One and Three depict people wearing jewelry, a hat, and sweatpants.  See ECF No. 67 at 6, Ex. 1, Ex. 3.  Plaintiffs describe these clothes as "goods," and suggest that because plaintiff Confidence Empire also sells such goods, there is a likelihood of consumer confusion.  But the exhibits themselves make clear that none of the pages are selling the clothes or jewelry appearing in the photographs.  See id.  Likewise, Exhibit Two shows a banner that reads "new products coming soon," but there is nothing in either

---

[3] Meta also argues that Confidence Empire does not have standing to pursue a trademark infringement claim because it does not own the trademark at issue.  ECF No. 60-1 at 17 (citing Brooklyn Bottling of Milton, N.Y., Inc. v. Ecuabeverage Corp., 2008 WL 577288, at *1 (S.D.N.Y. March 3, 2008) ("Only the owner of the trademark is granted standing to assert a claim of trademark infringement.")).  Plaintiffs do not seem to contest this point. See ECF No. 67 at 5-6.

[4] Some of the exhibits are duplicates of those attached to the FAC.  Meta argues that I should disregard the rest.  ECF No. 68 at 5 (citing Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010) ("Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss.")).  But the SAC falls far short of stating a claim for trademark infringement with or without the newly attached exhibits.

11

the Exhibit or plaintiffs' opposition that explains what products are "coming soon," and whether they will be similar to any products plaintiffs sell.  See id. Ex. 2.

The state law claim also fails because the SAC fails to allege that either plaintiff owns a trademark registered under Connecticut state law, as is required by the statute.  See Conn. Gen. Stat. § 35-11i (providing remedy only for infringement of "a mark registered under this chapter").

    e. Count Five: Connecticut Unfair Trade Practices Act

Finally, plaintiffs allege Meta violated the Connecticut Unfair Trade Practices Act ("CUTPA").  CUTPA prohibits unfair or deceptive acts or practices in the conduct of trade or commerce. See Conn. Gen. Stat. §42-110a et. seq.  Plaintiffs' CUTPA count merely incorporates the rest of the allegations in the complaint and then alleges "[t]he actions of the Defendant as aforesaid which are continuing and ongoing constitute a violation of CUTPA for which the Plaintiffs has suffered damages which are or may be unquantifiable in that its actions have created confusion in the market place."  ECF No. 57 at 6 ¶ 17.  Plaintiffs seem to concede that their CUTPA claim is entirely derivative of their other claims.  See ECF No. 67 at 6-7 ("If the Plaintiffs establish that the Defendant has violated their trademark rights it is axiomatic that there is a CUTPA violation").  Because the other claims must be dismissed, so must the CUTPA claim.

IV. Conclusion

Accordingly, the action is dismissed with prejudice.  The clerk may enter judgment in favor of defendant and close the case.

So ordered this 31st day of March 2022.

/s/ RNC
Robert N. Chatigny
United States District Judge
